# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:24-CV-01132-KDB-UMJ

| | |
|---|---|
| ELVIRE SIMONVIL, | |
| **Plaintiff,** | |
| v. | **MEMORANDUM AND ORDER** |
| AMERICAN AIRLINES INC., | |
| **Defendant.** | |

In December 2023, Plaintiff Elvire Simonivil traveled across the country on Defendant American Airlines ("American") to attend a funeral. While changing planes in Charlotte, North Carolina, Simonivil alleges that her interactions with American's staff violated her civil rights.

**NOW BEFORE** the Court is Defendant American's Motion to Dismiss (Doc. No. 37) Simonivil's Amended Complaint. The Court has carefully considered this motion, and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the motion.

## I.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court,

1

however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).

## II.    FACTS AND PROCEDURAL HISTORY

On December 23, 2023, Simonivil, a Black female, arrived at the Charlotte-Douglas Internation Airport (the "Airport") while on her way to the funeral of a family member. Doc. No 35 ¶¶ 11–12. After locating the gate for her flight, Simonivil approached the gate agent to inquire about changing her seat. *Id.* ¶ 13. Despite notifying the gate agent that she was traveling to a funeral and being dressed in "black funeral attire," Simonivil alleges the gate agent was "rude" and "dismissive," telling her that a single seat change was available for a fee. *Id.* ¶¶ 15–17, 19. Simonivil stated that she would think about it. *Id.* ¶ 19.

2

Shortly thereafter, Simonivil observed the same agent interact "pleasant[ly]" and "cheerful[ly]" with a white male traveler seeking to change seats, offering him multiple seat options. *Id.* ¶¶ 20–22. When Simonivil reapproached the gate agent to inquire about the seats allegedly offered to the white passenger, the agent "berat[ed]" her, exclaiming, "What are you doing listening to my conversations with other people," and "You can either buy a seat or leave." *Id.* ¶¶ 23–24. Simonivil further alleges that another gate agent laughed at the exchange and that nearby passengers stared at her. *Id.* ¶¶ 26, 28.

After Simonivil requested the gate agent's identifying information and asked why she was being treated rudely, the agent allegedly shouted that Simonivil was "just mad because [she couldn't] get a seat for free." *Id.* ¶¶ 29–30. At some point, Simonivil began recording the interaction on her cell phone. *Id.* ¶ 32. The gate agent then told Simonivil to "leave the counter or be kicked off the flight." *Id.* ¶ 34. Simonivil returned to her seat in the waiting area, where she overheard the gate agent say, "I'm not playing with that girl today." *Id.* ¶¶ 35–36.

Shortly thereafter, a manager arrived, and although she was "professional," she "sided" with the gate agent and told Simonivil that she could not board the flight unless she deleted the recording. *Id.* ¶¶ 39–40. As boarding began, Simonivil was held back by the manager, who told her that it was "illegal" to possess the recording, and asked her to prove that the recording had been deleted. *Id.* ¶¶ 40–41. Simonivil reluctantly surrendered her phone to the manager, who "deleted all proof of the gate agent's behavior." *Id.* ¶ 44. Only then was Simonivil allowed to board the plane. *Id.* ¶ 48. Simonivil alleges feelings of humiliation and mental anguish as a result of these events. *Id.* ¶ 50. She filed suit nearly a year later, alleging civil rights and state law claims related to the incident. American timely moved to dismiss all claims in the Amended Complaint, and the motion is ripe for this Court's review.

3

# III. DISCUSSION

Simonivil's allegations include racial and gender discrimination in violation of 42 U.S.C. § 1981, along with state law claims of invasion of privacy, negligent infliction of emotional distress, breach of contract, unfair and deceptive trade practices, coercion/duress, false imprisonment, fraud, and defamation. *Id.* ¶¶ 51–99.

## A.     § 1981 Discrimination Claims

*Racial Discrimination*

Simonivil first alleges that American violated § 1981 by discriminating against her because she is Black. More specifically, Simonivil alleges that the gate agent "intentionally discriminated" against her when she told Simonivil that only one seat change was available to her, and shortly thereafter, offered a White, male passenger multiple seat change options. *Id.* ¶¶ 19, 22, 56. American contends that Simonivil's Amended Complaint fails to allege facts to support her claim that American intentionally discriminated against her based on her race. The Court disagrees.

Congress enacted 42 U.S.C. § 1981 to "guarantee[ ] to all persons in the United States 'the same right ... to make and enforce contracts ... as is enjoyed by white citizens.'" *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting § 1981(a)). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting § 1981(b)).

To prevail on a § 1981 claim, a plaintiff must ultimately show both that the defendant intentionally discriminated on the basis of race and "that the discrimination interfered with a contractual interest." *Id.* (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). The plaintiff must also establish that the alleged interference would not have occurred

but for her race. *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020)). In the retail or consumer transaction context (which includes purchasing an airplane ticket or a seat upgrade), a plaintiff must allege facts permitting the inference that she was "denied the opportunity to contract for goods or services" because of her race. *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 355 (4th Cir. 2024) (quoting *Williams v. Staples, Inc.*, 372 F.3d 662, 667–68 (4th Cir. 2004)).

Although the Fourth Circuit has made clear that a plaintiff bringing a § 1981 claim is not required to plead a prima facie case of discrimination at the motion to dismiss stage, the complaint must still allege facts that, taken as true, permit a reasonable inference that a plaintiff was intentionally discriminated against on the basis of race in the making or enforcement of a contract. *Mark Vogel Acquisitions, LLC v. Prince George's Cnty. MD*, No. 24-CV-03008-LKG, 2025 WL 2374695, at *7 (D. Md. Aug. 14, 2025) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017)). *See also Nadendla*, 24 F.4th at 305; *Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017) (citing *Haywood v. Locke*, 387 F. App'x. 355, 358–59 (4th Cir. 2010) ("The similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage.")).

Simonivil alleges that her right to contract for transportation services on equal terms was impaired when the gate agent offered her only one seat change option yet quickly offered a White passenger multiple seat change options. Although American identifies several facially non-discriminatory explanations for why Simonivil was offered only a single seating option while another passenger received multiple options—such as differences in fare class, ticket type, or frequent flier mileage-status level—those alternative explanations present factual disputes better

5

suited for resolution at summary judgment. At this stage, accepting the allegations as true, the Court concludes that Simonivil has plausibly alleged racial discrimination.

*Gender Discrimination*

On the same set of facts, Simonivil further alleges that American's gate agent discriminated against her because she is a woman. Doc. No. 35 ¶¶ 58–59. However, § 1981 does not provide a cause of action for gender-based discrimination,[1] a point Simonivil concedes in her response to American's Motion to Dismiss. In light of this concession and the statute's limited scope, the Court will dismiss this claim with prejudice.

### B. <u>Choice of Law</u>

Before turning to each of Simonivil's state law claims, the Court must determine which state's law must be applied to those claims. American contends that all the claims are governed by Texas law, in accordance with the choice of law provision contained in its "Conditions of Carriage," which it attaches to its Motion to Dismiss. Doc. Nos. 37-1, 38 at 5. The Court concludes that the Conditions of Carriage—the contract governing Simonivil's travel—is integral to the Amended Complaint and Simonivil does not challenge its authenticity. Accordingly, the Court may properly consider the contract at this stage. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780

---

[1] Section 1981 protects against racial discrimination in the making and enforcement of contracts; it does not provide a cause of action for gender discrimination. The statute's text and Supreme Court precedent make clear that § 1981 is aimed at intentional discrimination based on race, ancestry, or ethnic characteristics. *See* 42 U.S.C. § 1981(a); *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613 (1987). Consistent with that understanding, federal courts across multiple circuits have repeatedly held that sex-based or gender-based discrimination falls outside § 1981's scope. *Rhyce v. Martin*, 173 F. Supp. 2d 521, 529–30 (E.D. La. 2001); *See also Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998) (claim of gender discrimination "plainly outside the scope of § 1981, which deals with discrimination on the basis of race or alienage"); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) ("Although § 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender based discrimination fall within its purview. Courts at every level of the federal judiciary have considered the question and reached the opposite result.").

6

F.3d 597, 606–07 (4th Cir. 2015) (The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity."). Simonivil contends, however, that the provision applies solely to her contractual claims and that North Carolina law governs her tort claims. Doc. No. 40 at 3. The Court must therefore determine whether, and to what extent, the choice of law provision applies to her claims.

Although Simonivil does not dispute the validity of the choice of law provision, or that she is bound by the terms of the Conditions of Carriage, she nevertheless asserts that the provision should be strictly applied to her contract claims. According to Simonivil, "choice of law provisions in a contract [only] determine which law is applicable for contract issues." Doc. No. 40 at 3. She cites no authority supporting such a limitation. American counters that the broad language in the choice of law provision requires by contract the application of Texas law to all of Simonivil's state law claims. Doc. No. 38 at 5. The Court agrees.

Absent a contractual choice of law provision, federal courts sitting in diversity "apply the substantive law of the forum state, including its choice-of-law rules." *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 n.3 (4th Cir. 2019); *see also Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). However, the Supreme Court long ago recognized the presumptive validity of contractual choice of law provisions, absent a clear showing that enforcement would be "unreasonable" under the circumstances.[2] *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9–10

---

[2] Choice of law provisions may be deemed unreasonable in limited circumstances (1) where the provision was procured by "fraud or overreaching"; (2) where enforcement would, as a practical matter, deprive the complaining party of her day in court due to "grave inconvenience or unfairness"; (3) where the chosen law is so fundamentally unfair that it would effectively "deprive the plaintiff of a remedy"; or (4) where enforcement would "contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (first citing *Carnival*

7

(1972); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

Consistent with that principle, North Carolina courts generally enforce contractual choice of law provisions where the parties "had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of [North Carolina]." *Tatum v. X Corp.*, 733 F. Supp. 3d 453, 459 (E.D.N.C. 2024) (first quoting *Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791, 794, 661 S.E.2d 750, 752 (2008); and then citing N.C. Gen. Stat. § 25-1-301)*. See also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 600–01 (4th Cir. 2004); *Brimer*, 770 F. Supp.3d at 885; *Tanglewood,* 299 N.C. at 262. North Carolina courts are reluctant to find a violation of public policy absent a showing that the foreign law offends "some prevalent conception of good morals or fundamental principle of natural justice or involve[s] injustice to the people of the forum state." *Torres v. McClain*, 140 N.C. App. 238, 243 (2000) (quoting *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 857–58 (1988)).

Here, at all relevant times, American's Conditions of Carriage stated that "[w]hen you buy a ticket or travel on a flight provided by American Airlines, you agree: To the extent not preempted by federal law, Texas law applies to this contract and *any dispute from your ticket purchase or travel* on American Airlines without regard to conflict of law principles." Doc. No. 37-1 at 3 (emphasis added). Courts within the Fourth Circuit have recognized that similarly broad language reflects the parties' intent to reach beyond purely contract claims. *See Tatum,* 733 F. Supp. 3d at 459 (contract terms stating that the laws of California would govern "any dispute that arises between [the user] and Twitter" applied to product-liability tort claim). *See also Hitachi Credit*

---

*Cruise Lines*, 499 U.S. at 595; and then citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12–13, 15, 18 (1972)). Simonivil does not allege the provision is unreasonable under any of these standards.

8

*Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (holding that a choice-of-law clause applying Virginia law to "the rights and obligations of the parties hereunder" reflects language broad enough to show the parties intended the provision to reach more than just contract claims).

The Court therefore concludes that the choice of law provision in the Conditions of Carriage is enforceable and applies to all of Simonivil's state law claims, including those sounding in tort. Simonivil's interactions with American's gate agents arose directly from her attempt to secure alternative seating on the flight for which she had purchased a ticket, bringing the dispute squarely within the scope of the provision. Accordingly, the Court will evaluate Simonivil's state law claims under Texas law.

### C. <u>Invasion of Privacy</u>

Turning first to Simonivil's invasion of privacy claim, she alleges that American intruded upon her privacy when its manager required Simonivil to "prove" that she had deleted a video recording of her interactions with gate staff—by allowing the manager to search her cell phone— before she would be permitted to board the aircraft on which she had paid to fly. Doc. No. 35 ¶¶ 40, 63–64.

Texas recognizes invasion of privacy as an intentional tort. *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App. 2018) (citing *Billings v. Atkinson*, 489 S.W.2d 858, 860– 61 (Tex. 1973)). The Texas Supreme Court has identified three distinct forms of the tort: "(1) intrusion upon one's seclusion or private affairs; (2) public disclosure of embarrassing private facts; and (3) appropriation of one's name or likeness." *Id.* (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994)). The form relevant here—intrusion upon seclusion—requires a plaintiff to allege facts showing that (1) "the defendant intentionally intruded upon the plaintiff's solitude, seclusion, or private affairs," and (2) "the intrusion would be highly offensive to a

9

reasonable person." *Martin v. Guevara*, 464 Fed. Appx. 407, 410 (5th Cir. 2012) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

Intrusion may occur through either a "physical invasion of the plaintiff's property or by nonphysical invasion, such as spying or eavesdropping on private conversations" with the aid of electronic surveillance. *Johnson v. Bearfoot Companies, LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *5 (Tex. App. May 16, 2024) (citing *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App. 2018)). To satisfy the "highly offensive" element, the intrusion must be "unreasonable, unjustified, or unwarranted." *Id* (citing *Moricz v. Long*, No. 06-17-00011-CV, 2017 WL 3081512, at *5 (Tex. App. July 20, 2017)) (additional citations omitted).

Texas law further recognizes that cell phones and similar mobile devices are personal property, and their owners retain the full bundle of "fundamental" property rights associated with ownership. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 157 (Tex. App. 2018). Those rights include the rights to possess, control, use, transfer, and—critically—to exclude others. *Id.* (citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012)); *see also Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (describing the right to exclude as "one of the most essential sticks in the bundle of rights that are commonly characterized as property.") (additional citation omitted). Individuals also maintain a "subjective expectation of privacy in the contents of their [personal] cell phones." *Id.* at 158 n.9 (citing *Granville v. State*, 423 S.W.3d 399, 405 n.16 (Tex. Crim. App. 2014)). Thus, a compelled search of a passenger's personal cell phone may implicate protected privacy interests and support an invasion of privacy claim. *Id.* ("an employer's search of an employee's personal cell phone … would potentially implicate privacy concerns and may give rise to a claim for invasion of privacy.").

10

Here, Simonivil alleges that American intruded upon her seclusion by requiring her, under threat of being denied boarding, to allow American's staff to review the contents of her cell phone and delete a video recording of her interaction with the gate agent. At the motion to dismiss stage, this plausibly alleges an invasion of privacy under Texas law.

### D.    Negligent Infliction of Emotional Distress

Simonivil next alleges that American owed her a duty of ordinary care to protect her from harm, *see* Doc. No. 35 ¶ 68, and that American breached that duty by negligently inflicting emotional distress ("NIED") when the gate agent spoke to her in a rude manner. *Id.* ¶ 69.

However, Texas does not recognize a general duty to avoid negligently inflicting emotional distress. *Rader Funeral Home, Inc. v. Chavira*, 553 S.W.3d 10, 14 (Tex. App. 2018) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 595–96 (Tex. 1993)). Although the Texas Supreme Court briefly recognized an independent cause of action for NIED in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649, 653–54 (Tex. 1987), it expressly overruled that decision in *Boyles*, holding that NIED is not an independent tort and that emotional distress damages are recoverable only when tied to a breach of some other legally recognized duty. *Id.* at 14–15 (citing *Boyles,* 855 S.W.2d at 594–96). Thus, mental anguish damages are generally unavailable absent (1) "intent or malice"; (2) "serious bodily injury"; (3) a "special relationship" (such as physician–patient or contracts involving intensely emotional, noncommercial subjects like preparing a corpse for burial); or (4) a narrow category of cases involving inherently shocking or disturbing injuries where mental anguish is highly foreseeable, such as wrongful death or bystander claims. *Rader Funeral Home, Inc. v. Chavira*, 553 S.W.3d 10, 15 (Tex. App. 2018) (citing *City of Tyler v. Likes,* 962 S.W.2d 489, 494–96 (Tex. 1997)).

Simonivil has not plausibly alleged that American acted with intent or malice, nor does she allege any bodily injury. To be sure, Simonivil's allegations describe general rudeness. But the relationship between a common carrier (or its gate agents) and a passenger does not constitute the type of special relationship recognized under Texas law, and rude or discourteous conduct is not "inherently shocking or disturbing" such that mental anguish would be highly foreseeable.[3] Accordingly, this claim will be dismissed.

### E.   Breach of Contract

In her breach of contract claim, Simonivil alleges that she and American entered into a valid agreement under which American would provide transportation services in exchange for payment. Doc. No. 35 ¶ 73. Simonivil further alleges that American breached the parties' contract by "denying her access to all seating options" and by conditioning her ability to board the aircraft on her compliance with a demand to surrender her personal cell phone for review and deletion of a video recording of its staff. Doc. No. 35 ¶ 74.

Under Texas law, a plaintiff must allege and ultimately prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant, and (4) the plaintiff suffered damages resulting from the breach. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.,* 574 S.W.3d 882, 890 (Tex. 2019); *Atrium Med. Ctr., LP v. Houston Red C LLC,* 546 S.W.3d 305, 311 (Tex. App. 2017), *aff'd,* 595 S.W.3d 188 (Tex. 2020); *Coim USA*

---

[3] Simonivil's NIED claim would fail even under North Carolina law. In *Sanders v. Duke Energy Carolinas, LLC,* No. 3:20-cv-00215-KDB-DSC, 2022 WL 282567, at *4 (W.D.N.C. Jan. 31, 2022), this Court rejected an NIED claim where the plaintiffs alleged they "watched helplessly as their valuable and sentimental property and family homes were damaged and/or destroyed" due to Duke Energy's allegedly negligent operation of hydroelectric dams during an "extreme rain event." Although emotional upset from seeing one's home flood is understandable, it was not *reasonably foreseeable*, as a matter of law, that plaintiffs would suffer *severe emotional distress* from the flooding of their homes. Similarly, it would not be reasonably foreseeable that Simonivil would suffer severe emotional distress simply because American's gate agent was rude to her.

*Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 687–88 (N.D. Tex. 2023). "A breach occurs when a party fails or refuses to do something he has promised to do." *Atrium Med. Ctr.*, 546 S.W.3d at 311 (citing *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.,* 826 S.W.2d 638 (Tex. App. 1992)).

In addition, Texas law has long required that any modification to a contract be supported by the same elements necessary for contract formation, including "a meeting of the minds supported by consideration." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986) (citing *Rhoads Drilling Co. v. Allred,* 123 Tex. 229, 70 S.W.2d 576, 583 (1934)) (additional citation omitted). Thus, a modification is ineffective absent mutual assent, and an attempt to enforce a unilateral change may constitute a breach.

The parties do not dispute that a valid contract existed or that Simonivil held a confirmed ticket entitling her to board the flight. Simonivil's theory is that American unilaterally imposed a new condition of performance—requiring her to delete a video depicting her interactions with the gate agent as a prerequisite to boarding—and that this unauthorized addition constituted a breach of contract because she never assented to it. Such conduct does not create an enforceable contract modification and instead may give rise to a breach. Accordingly, Simonivil has plausibly alleged breach of contract.

### F.  <u>Unfair and Deceptive Trade Practices</u>

Next, Simonivil alleges that American violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA" or "UDTP") by "misrepresent[ing] seat availability to Simonivil, while providing different information to a [W]hite male passenger," when she attempted to change seats before boarding. Doc. No. 35 ¶ 77.

As Texas law governs this dispute, Simonivil cannot proceed under North Carolina's UDTPA because Texas law does not recognize a cause of action under that statute. Notwithstanding the application of Texas law, Simonivil's UDTPA theory fails even under North Carolina law. To state a claim under N.C. Gen. Stat. § 75-1.1, a plaintiff must plausibly allege that the defendant (1) engaged in an "unfair or deceptive act," (2) that the act occurred "in or affect[ed] commerce," and (3) that it proximately caused the plaintiff's injury. *Elsayed v. Fam. Fare LLC*, No. 1:18-CV-1045, 2020 WL 4586788, at *14 (M.D.N.C. Aug. 10, 2020), *aff'd*, No. 21-1744, 2023 WL 5842301 (4th Cir. Sept. 11, 2023). A practice is "unfair" if it offends "public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is "deceptive" if it "has the capacity to mislead." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

North Carolina courts frequently confront UDTP claims arising from contractual disputes, where plaintiffs often add a UDTP count in an effort to obtain treble damages and attorney's fees. *See Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993). To prevent routine contract cases from becoming UDTP cases, courts have repeatedly held that "a breach of contract, even if intentional, is not sufficiently unfair or deceptive" to trigger § 75-1.1 absent "substantial aggravating circumstances." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 418 S.E.2d 694, 700 (1992)); *see also Lowe's Cos., Inc. v. Ferrandino & Son, Inc.*, No. 5:22-CV-00033-KDB-DCK, 2022 WL 2921137, at *2–3 (W.D.N.C. July 25, 2022).

Put simply, a plaintiff must allege "something more than a mere breach of contract." *Dew Elec., Inc. v. Mass Elec. Constr. Co.*, No. 3:09-CV-361-RJC-DCK, 2010 WL 2131899, at *4 (W.D.N.C. May 25, 2010). Simonivil has not done so. Her UDTP claim rests on the same factual

allegations underlying her breach of contract claim, and an alleged misrepresentation about seat availability on a single flight does not, on these facts, constitute a substantial aggravating circumstance. Accordingly, the UDTP claim will be dismissed with prejudice.

### G. **Duress/Coercion**

Simonivil also alleges that American subjected her to duress by applying "wrongful pressure" on her through "wrongful physical and mental threat," thereby depriving her of "her free will and ability to make meaningful decisions for herself." Doc. No. 35 ¶¶ 82–83.

Under Texas law, duress claims arise almost exclusively in the context of contractual or economic pressure as a means of avoiding a contract. *Parks v. Affiliated Bank*, No. 05-16-00784-CV, 2018 WL 2057545, at *5 (Tex. App. May 3, 2018) (citing *Man Indus. (India), Ltd. v. Midcontinent Exp. Pipeline, LLC*, 407 S.W.3d 342, 367 (Tex. App. 2013)). To state a claim for economic duress, a plaintiff must allege that (1) the defendant "threatened to do some act that it had no legal right to do," (2) the threat was of such a nature as to deprive the plaintiff of the exercise of free will, (3) the threat in fact overcame the plaintiff's will and induced action the plaintiff would not otherwise have taken and was not legally obligated to take, (4) the "restraint was imminent," and (5) the plaintiff lacked any "means of protection." *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 169 (Tex. App. 2017) (citing *In re Frank Motor Co.*, 361 S.W.3d 628, 632 (Tex. 2012)) (additional citation omitted).

Here, Simonivil appears to allege that, notwithstanding the existence of a valid contract, American unlawfully and unilaterally imposed a new condition of performance—requiring her to delete a publicly recorded video from her personal cell phone—by threatening to bar her from boarding unless she complied. Simonivil, en route to a family funeral and facing an actively boarding flight, alleges she reasonably believed she had no meaningful choice but to comply.

However, even accepting these allegations as true, Simonivil does not seek to avoid a contract, rescind an agreement, or invalidate a release. Instead, she seeks affirmative damages for duress. Texas law does not recognize such a tort. Because duress is not an independent cause of action under Texas law and is cognizable only as an affirmative defense or contract-avoidance doctrine, Simonivil's claim fails as a matter of law. Moreover, although Simonivil asserts that courts may consider claims for duress when pleaded alongside other tort or equitable theories, she identifies no Texas authority supporting that proposition. In the absence of any legal basis in Texas law for a standalone claim for tortious duress, dismissal of the claim is warranted.

### H.    False Imprisonment

In her next claim, Simonivil alleges American falsely imprisoned her by refusing to allow her to board the aircraft until she "proved" she had deleted the video of her interaction with the gate agent.

Under Texas law, a plaintiff asserting false imprisonment must plausibly allege that the defendant (1) willfully detained her, (2) without her consent, and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). A detention may be accomplished "by violence, by threats, or by any other means that restrain a person from moving from one place to another." *Fojtik v. Charter Med. Corp.*, 985 S.W.2d 625, 629 (Tex. App. 1999) (quoting *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995)). When the alleged restraint is based on threats, the plaintiff must show that the threat would inspire "a just fear of injury to person, reputation, or property." *Id.* (citing *Randall's Food,* 891 S.W.2d at 629). Threats to deny, or the actual denial of, boarding a commercial flight, standing alone, are insufficient to constitute unlawful imprisonment. *See Smith v. Comair*, 134 F.3d 254, 259–60 (4th

Cir. 1998) (holding that denial of boarding did not amount to detention because the plaintiff was not compelled to remain or go anywhere against his will).

Here, Simonivil alleges that American restrained her by threatening to and temporarily preventing her from boarding the plane until she complied with American's instructions. But she does not allege that she was prevented from leaving the boarding area or that she was compelled to remain in any particular place. Indeed, nothing in the Amended Complaint suggests that Simonivil could not have walked away at any time. Accordingly, Simonivil has failed to plausibly allege that American detained her, and this claim will be dismissed.

## I. <u>Fraud</u>

Simonivil further asserts a claim for common law fraud, alleging that American made "a false representation of material fact," that was intended to deceive her, that she was, in fact, deceived after reasonably relying on the representation, and that she suffered damages. Doc. No. 35 ¶¶ 90–94.

Under Texas law, a plaintiff must plead facts showing: (1) the defendant made a "material representation"; (2) "the representation was false"; (3) the defendant knew the representation was false when made or asserted it recklessly without knowledge of its truth; (4) the defendant intended the plaintiff to rely on the representation; (5) the plaintiff in fact relied on it; and (6) the plaintiff suffered injury as a result. *Burghardt v. Bank of Am., N.A.*, No. 3:25-CV-00145, 2025 WL 3201637, at \*3 (S.D. Tex. Nov. 5, 2025), *report and recommendation adopted,* No. 3:25-CV-00145, 2026 WL 87160 (S.D. Tex. Jan. 12, 2026) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). A fact is material if it would likely influence "the conduct of a reasonable person" in the transaction at issue. *Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. App. 2015) (quoting *Fleming v. Curry*, 412 S.W.3d 723, 736 (Tex. App.

17

2013)). Materiality turns on "whether a reasonable person" would consider the information important and "be induced to act" upon it in deciding how to proceed in the transaction. *Id.* (quoting *Fleming,* 412 S.W.3d at 737) (additional citation omitted).

Simonivil contends that she need not plead the specific "who, what, when, where, and how" of her fraud claim. Doc. No. 40 at 19. Instead, she maintains that her generalized assertions—that American was untruthful about available seating and about the legality of recording its staff—are standing alone sufficient to state a claim. They are not.

Simonivil has not plausibly alleged reliance or materiality with respect to any statement concerning alternative seating. She acknowledges that she already held a confirmed seat when she approached the gate agent. She further concedes that, after being told there was one seat she could switch to, she responded only that she would "think about it." She does not allege that she changed her seat in reliance on the agent's statements, only to later discover that other, more desirable seats existed, nor does she claim that she would have chosen a different seat had she been offered multiple options.

Simonivil likewise fails to plausibly allege that American's manager knowingly or recklessly misrepresented that recording gate staff was illegal. Even assuming such a statement was made, Simonivil does not allege that she relied on it when providing her phone to the manager. To the contrary, Simonivil's own allegations foreclose any inference of reliance. She states that she surrendered her phone not because she believed recording was unlawful, but because American informed her that she would not be permitted to board unless she complied, and because she feared "missing her loved one's memorial service"—an outcome that necessarily depended on her ability to board the plane. Doc. No. 35 ¶ 44. Because American in fact prevented Simonivil from boarding until she relinquished her phone, there was no misrepresentation as to that condition. And to the

18

extent Simonivil contends that American falsely stated that recording gate staff was illegal, the claim fails for the independent reason that she does not allege she believed or relied upon any such statement. Put simply, Simonivil has not plausibly alleged a material misrepresentation or reliance, therefore her fraud claim fails and will be dismissed.

### J.  **Defamation**

In her final claim, Simonivil alleges that American "communicated false statements" that were overheard by other passengers in the boarding area. Doc. No. 35 ¶ 97. Specifically, Simonivil identifies two statements as defamatory: the gate agent's assertion that Simonivil was mad because she couldn't get a seat for free, which Simonivil contends was stated loudly enough "for the whole gate to hear," and the manager's statement that it was "illegal" for Simonivil to retain the recording of her interaction with the gate agent. Doc. No. 35 ¶¶ 30–31, 38, 41.

To state a claim for defamation under Texas law, a plaintiff must allege: (1) the "publication of a false statement of fact to a third party," (2) that was defamatory concerning the plaintiff, (3) made with the requisite degree of fault regarding its falsity, and (4) that "proximately caused damages." *Amell v. Van Pelt*, ___ S.W.3d ___, No. 14-24-00297-CV, 2025 WL 3275373, at *4–5 (Tex. App. Nov. 25, 2025) (citing *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022)). Whether a statement is capable of a defamatory meaning is a threshold question of law for the court. *Id.* at 5 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013)). A statement is defamatory only if it is reasonably capable of the defamatory meaning the plaintiff ascribes to it, and it is for the court to determine both whether the communication can bear that meaning and whether that meaning is defamatory in character. *Id.* (first citing *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987); and then citing *Restatement (Second) of Torts* § 614 cmt. B). A defamatory statement is one that, viewed as a whole and in light of the

surrounding circumstances, would tend to diminish the plaintiff's reputation in the eyes of a person of ordinary intelligence. *Id.* (citing *Hancock*, 400 S.W.3d at 63); *see also Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App. 2021)). If the statement is not reasonably capable of a defamatory meaning, the claim fails as a matter of law. *Id.* (citing *Hancock*, 400 S.W.3d at 66).

Defamatory statements are either "defamatory per se or defamatory per quod." *Id.* (citing *Hancock*, 400 S.W.3d at 63). "A statement is defamatory per se if it injures a person in her office, business, profession, or occupation, or if it falsely accuses her of committing a crime." *Id.* (quoting *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *4 (Tex. App. Apr. 9, 2015)). Such statements are so inherently harmful that the law presumes damages. *Id.*

Statements that are not defamatory on their face and require extrinsic evidence to establish their defamatory meaning are defamatory per quod, and in such cases the plaintiff must plead and prove actual damages, including that the audience understood the defamatory meaning she alleges. *Id.* (quoting *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144 (Tex. App. Apr. 9, 2015)); *Clemens v. McNamee*, 608 F. Supp. 2d 811, 826–27 (S.D. Tex. 2009), *aff'd*, 615 F.3d 374 (5th Cir. 2010) (additional citations omitted).

Although Simonivil does not challenge the legitimacy of the manager's statements, she has plausibly alleged American falsely accused her of a crime, namely, recording her interaction with American's staff, and that the accusation was overheard by at least one third party.[4] Accordingly, American's Motion will be denied as to this claim.

---

[4] The Court infers from the Complaint that other passengers in the boarding area could hear the exchange. Simonivil alleges that boarding was underway and that passengers were walking past her as American prevented her from proceeding, circumstances that reasonably support the conclusion that the conversation was audible to those nearby. *See* Doc. No. 35 ¶¶ 41–45.

## IV.     ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 37) is **GRANTED** in part and **DENIED** in part as to each of Plaintiff's claims as set forth in this Order; and

2. This case shall **proceed toward trial on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 9, 2026

Kenneth D. Bell
United States District Judge